IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Michael Billioni, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| v. | ) | 0:14-cv-03060-JMC |
| | ) | |
| Sheriff Bruce Bryant, individually and in | ) | |
| his official capacity as York County Sheriff, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | **ORDER** |
| _____ | ) | |

This matter is before the court pursuant to Defendant Sheriff Bruce Bryant's ("Defendant") Renewed Motion for Partial Judgment on the Pleadings ("Motion for Partial Judgment on the Pleadings"). (ECF No. 48.) Plaintiff Michael Billioni ("Plaintiff") filed a Reply in Opposition to Defendant's Motion for Judgment on the Pleadings ("Reply in Opposition"). (ECF No. 49.) Subsequently, Defendant filed a Reply in Support of the Renewed Motion for Partial Judgment on the Pleadings ("Reply in Support"). (ECF No. 50.) For the following reasons, Defendant's Motion for Partial Judgment on the Pleadings is **GRANTED**. (ECF No. 48.)

## I.     RELEVANT BACKGROUND TO THE PENDING MOTION

On July 31, 2014, Plaintiff, a former detention officer, filed an initial Complaint (ECF No. 1), which was eventually amended (ECF No. 44), against Defendant as a result

of Plaintiff's termination from the York County Detention Center ("Detention Center").[1] The lawsuit alleges violations of the First Amendment Right to Free Speech and the Fourteenth Amendment Right to Due Process pursuant to 42 U.S.C. § 1983; the South Carolina Whistleblower Act ("Whistleblower Act"), S.C. Code Ann. §§ 8-27-10 to -50 (1976)); the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219; the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann. §§ 41-10-40 to -50 (1986); and Public Policy as to claims for Retaliation and Wrongful Termination. (ECF No. 44.) Following the death of Joshua Grose, a prisoner at the Detention Center, Plaintiff relayed his reaction concerning the death and the policies and procedures in place at the Detention Center to his wife. (*Id.*) Plaintiff's wife, who is a research analyst at a media outlet, contacted a news director suggesting that an investigation be conducted. (*Id.*) Plaintiff was subsequently terminated. (*Id.*)

On February 9, 2015, Defendant filed a Motion for Partial Judgment on the Pleadings. (ECF No. 34.) On March 12, 2015, Plaintiff filed a Motion to Amend/Correct Complaint. (ECF No. 39.) Thereafter, Defendant withdrew his Motion for Partial Judgment on the Pleadings and filed a Response Consenting to Plaintiff's Motion to Amend/Correct Complaint. (ECF Nos. 40, 41.) On March 16, 2015, the court granted Plaintiff's Motion to Amend/Correct Complaint. (ECF No. 43.) Since filing of the Amended Complaint (ECF No. 44), Defendant has filed an Answer (ECF No. 47) and filed a Renewed Motion for Partial Judgment on the Pleadings (ECF No. 48). Plaintiff

---

[1] The court observes that Plaintiff has amended his initial Complaint (ECF No. 1) and filed an Amended Complaint (ECF No. 44), which indicates that his claims are now only directed at Sheriff Bruce Bryant, individually and in his official capacity as York County Sheriff.

filed a Reply in Opposition.  (ECF No. 49.)  Thereafter, Defendant filed an additional Reply in Support.  (ECF No. 50.)

## II.    LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  "A motion for judgment on the pleadings is intended to test the legal sufficiency of the complaint and will operate to dispose of claims 'where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noted facts.'" *Cont'l Cleaning Serv. v. United Parcel Serv., Inc.*, No. 1:98CV1056, 1999 WL 1939249, at *1 (M.D.N.C. Apr. 13, 1999) (quoting *Herbert Abstract v. Touchstone Props., Inc.*, 914 F.2d 74, 76 (5th Cir. 1990)).  A motion for judgment on the pleadings under Rule 12(c) is considered under a similar standard as Rule 12(b)(6), with the key difference being that on a 12(c) motion, the court considers the answer as well as the complaint.  *Id.* (citation and quotations omitted).

In order to survive a motion for judgment on the pleadings, the complaint must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  However, the court is not required to

accept the legal conclusions the plaintiff sets forth in the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

## III.    ANALYSIS

Defendant's Motion for Partial Judgment on the Pleadings maintains that (1) Plaintiff's First Amendment Right to Free Speech and Fourteenth Amendment Right to Due Process claims pursuant to § 1983 against Defendant, in his official capacity, are barred; and (2) that all of Plaintiff's remaining claims are barred.[2]  (ECF No. 48.)

### 1.  Section 1983 Claims

Defendant maintains that to the extent Plaintiff seeks monetary damages against Defendant in his official capacity, his § 1983 claims must be dismissed because he is not a person within the meaning of § 1983 and because Defendant is entitled to sovereign immunity and Eleventh Amendment immunity.  (ECF No. 48-1 at 3.)  Section 1983 provides that:

> *Every person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

§ 1983 (emphasis supplied). "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S.

---

[2] The court observes that Defendant has not sought to dismiss Plaintiff's § 1983 claims against Defendant in his individual capacity.  (ECF No. 48-1 at 6 ("Turning to the [Defendant] in his individual capacity, he is entitled to and has moved for dismissal of all the claims in the Amended Complaint except for the § 1983 claims.").)

58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)).  Therefore, the court finds that Defendant is not a person within the meaning of § 1983.

As to Plaintiff's claim for monetary damages against Defendant in his official capacity, the "Eleventh Amendment bars suits in federal courts for money damages against an 'unconsenting State.'"  *See Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).  "This immunity extends to 'arm[s] of the State.'"  *Id.* (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).  "The 'largely, if not wholly, dispositive' factor in determining whether an entity is properly characterized as an arm of the state is whether the state treasury will be liable for the judgment."  *Id.* (citing *Gray v. Laws*, 51 F.3d 426, 433 (4th Cir. 1995)).  If the state's treasury will not be affected by the judgment, courts consider whether the suit will jeopardize "'the integrity retained by [the] State in our federal system' and whether the state possesses such control over the entity claiming Eleventh Amendment immunity that it can legitimately be considered an 'arm of the state.'"  *Id.* (quoting *Gray*, 51 F.3d at 434).  Courts addressing this issue have concluded that in his official capacity, a Sheriff is an arm of the state.  *Id.* (citing *Gulledge v. Smart*, 691 F. Supp. 947, 954-55 (D.S.C. 1988) (holding that South Carolina Sheriffs are state officials for Eleventh Amendment purposes)).  Therefore, the court finds that Defendant, in his official capacity, is an arm of the state and thus entitled to Eleventh Amendment immunity as to claims for monetary damages.

Plaintiff argues that Defendant, in his individual and official capacity, is not entitled to immunity regarding the § 1983 claims because he is seeking injunctive relief, as well as monetary relief, including but not limited to reinstatement of Plaintiff to his

former position of employment. (ECF Nos. 44 at 23-24, 49 at 3-5.) A state official when sued for injunctive relief in his official capacity is a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State.'" *See Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) and *Ex Parte Young*, 209 U.S. 123, 159-160 (1908)); *Vollette v. Watson*, 937 F. Supp. 2d 706, 715-16 (E.D. Va. 2013). The issue appears to be whether such prospective injunctive relief, as in the case of a reinstatement, can result in a monetary judgment for back pay. (*See* ECF Nos. 48-1 (citing *Hedberg v. Darlington Cnty. Disabilities and Special Needs Bd.*, No. 95-3049, 1997 WL 787164, at *3 (4th Cir. Dec. 24, 1997) (unpublished) (finding that where damages claims were precluded by the Eleventh Amendment, plaintiff "was limited to only equitable relief-prospective injunctive relief, reinstatement, and attorney's fees-in which there is no right to trial by jury")), 49 at 4-5, 50 at 1-2).)

Plaintiff maintains that the award of back pay is an "integral part of the equitable remedy of injunctive reinstatement." (ECF No. 49 at 4 (citing *Smith v. Hampton Training Sch. for Nurses*, 360 F.2d 577, 581 n.8 (4th Cir. 1966)).)[3] The United States Supreme Court since *Smith* has held that retroactive relief in the form of back pay and benefits is barred by the Eleventh Amendment. *See Edelman*, 415 U.S. at 664-65, 668 (reversing a retroactive award of monetary relief because "it [was] in practical effect indistinguishable in many aspects from an award of damages against the State"); *see also Antrican v. Odom*, 290 F.3d 178, 186 (4th Cir. 2002) (emphasizing that the focus of an injunction's

---

[3] *But see Bennett v. Gravelle*, 323 F. Supp. 203, 209-10 (D. Md. 1971) (distinguishing *Smith* on the facts and arguing that *Smith* involved an unlawful discharge based on an unlawful racially discriminatory policy, whereas, the case at hand involved a lawful policy and discharge).

6

impact on the State's treasury must be directed at whether the injunctive relief sought is prospective or retroactive in nature).  To the extent Plaintiff seeks monetary damages or a retroactive monetary award, those claims are barred; however, Plaintiff's § 1983 claims which seek prospective injunctive relief may proceed.

2.  Remaining Claims

Defendant maintains that all of Plaintiff's remaining claims are barred: (A) Failure to Pay Overtime Wages under the FLSA, (B) Violation of the Whistleblower Act, (C) Retaliation and Wrongful Termination in Violation of Public Policy, and (D) Violation of the South Carolina Payment of Wages Act.

A.  FLSA  Claim – Failure to Pay Overtime Wages

Defendant maintains that (1) Plaintiff's claim against Defendant in his official capacity under the FLSA for failure to pay overtime wages is barred by Eleventh Amendment immunity and that unlike his § 1983 claims, prospective injunctive relief under the FLSA must be brought by the Secretary of Labor – not employees; and that (2) Plaintiff's claim against Defendant in his individual capacity is barred by sovereign immunity.  (ECF No. 48-1 at 5-6.)

i.    FLSA Claim – Defendant's Official Capacity

Defendant argues that Plaintiff's FLSA claim against Defendant in his official capacity is barred.  The FLSA provides that:

> [N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.  The term "employer" is defined to include "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency.

7

*Martin v. Wood*, 772 F.3d 192, 194 (4th Cir. 2014) (citation and internal quotation marks omitted). At the outset, the court notes that Plaintiff asserts that Defendant is not entitled to sovereign immunity and that even if it were entitled to immunity, such immunity was waived. (ECF No. 49 at 5.) However, Plaintiff has not presented any legal authority that demonstrates that the State has explicitly waived its immunity. "In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, [a court] will find waiver only where stated by the most express language or by such overwhelming implications from the texts as will leave no room for any other reasonable construction." *Edelman*, 415 U.S. at 673 (citation and internal quotation marks omitted). A plaintiff must provide legal authority indicating that the State has explicitly waived its immunity. *See Barnett v. Pikes Cmty. Coll. Police Dep't*, No. 14-cv-02820, 2015 WL 4245822, at *3 (D. Colo. July 14, 2015) (citation omitted) (finding no waiver where policies promulgated by the State Department of Personnel and Administration provided generally that the FLSA applied to state employees). Plaintiff has not demonstrated that the State of South Carolina has explicitly waived its immunity. Accordingly, although Defendant is an arm of the State, the State has not waived sovereign immunity as to its potential liability under the FLSA.

With respect to Plaintiff's argument regarding Defendant's adoption of a policy of FLSA compliance, the court notes that Defendant's Reply in Support indicates that Plaintiff's attached exhibit (ECF No. 44-3) pointing to a policy of compliance with the FLSA is in actuality a reference to the York County Employee Handbook. (ECF No. 50 at 3 n.2.) Defendant argues that he is not bound by York County's employment policies. (*Id.* (citing *Eargle v. Horry County*, 545 S.E.2d 276, 280 n.5 (S.C. 2001), for the

proposition that S.C. Code Ann. § 4-9-30(7) (Supp. 1999) prohibits county's from exercising employment authority over employees of elected officials).)  Although there appears to be a factual dispute as to Defendant's "policy of FLSA compliance," Plaintiff's argument, nevertheless, does not meet the standard set forth in *Edelman*. Therefore, the court finds that the State has not waived its immunity through these policies.

Moreover, Plaintiff's reliance on *Creamer v. Anderson Cnty. Sheriff's Office*, No. 8:13–cv–03405–JMC, 2014 WL 3889118, at *1 (D.S.C. Aug. 7, 2014) for the proposition that a breach of the defendant Sheriff's policy could survive a Rule 12(b)(6) motion for failure to state a claim is misguided.  The complaint in *Creamer* involved, *inter alia*, a violation of the FLSA and a breach of contract claim.  *See Creamer*, 2014 WL 3889118, at *1. Specifically, the court's order addressed the defendant's Rule 12(b)(6) motion to dismiss the complaint's breach of contract claim.  *See Creamer, 2014 WL 3889118*, at *1 (indicating that the issue presented was whether a defendant's policy indicating that employees were not subject to retaliatory disciplinary action for reporting criminal wrongdoings could alter the statutory at-will nature of plaintiff's employment).  Without addressing the merits of the claim, the court in *Creamer* found that the plaintiffs, who had been subject to retaliation, had sufficiently pleaded facts to allege that the defendant had altered the nature of plaintiffs' at-will employment relationship by issuing certain policies.  *See Creamer*, 2014 WL 3889118, at *5 (citation omitted).  However, the court's order in *Creamer* did not address the FLSA claim.  *Id.* Therefore, *Creamer's* application to the instant FLSA claim is misplaced.

Finally, unlike Plaintiff's § 1983 claims, Plaintiff cannot seek prospective injunctive relief under the FLSA. "The FLSA has been interpreted as precluding an employee's access to injunctive relief to enforce prospectively the provisions of the FLSA." *Frazier v. Courter*, 958 F. Supp. 252, 254 (W.D. Va. 1997) (citing *Lorillard v. Pons*, 434 U.S. 575, 581 (1978)); *see Heitmann v. City of Chicago, Ill.*, 560 F.3d 642, 644 (7th Cir. 2009) (citing 29 U.S.C. § 211(a)) (stating that injunctive relief under FLSA is permissible only under suits by the Secretary of Labor). Accordingly, Plaintiff's claim under the FLSA against Defendant in his official capacity is barred.

ii.     FLSA Claim – Defendant's Individual Capacity

Defendant maintains that Plaintiff's FLSA claim against Defendant in his individual capacity is barred by sovereign immunity because the real party in interest is Defendant in his official capacity. (ECF Nos. 48-1 at 7, 50 at 4.) To identify the real, substantial party in interest, courts examine the substance of the claims, positing inquiries like:

> (1) were the allegedly unlawful actions of the state officials tied inextricably to their official duties; (2) if the state officials had authorized the desired relief at the outset, would the burden have been borne by the State; (3) would a judgment against the state officials be institutional and official in character, such that it would operate against the State; (4) were the actions of the state officials taken to further personal interests distinct from the State's interests; and (5) were the state officials' actions *ultra vires*.

*Martin*, 772 F.3d at 196 (citations and internal quotation marks omitted).[4]

---

[4] The court notes that as to the issue of Defendant's liability in his individual capacity under the FLSA, both parties devote substantial portions of their arguments to and rely on courts' parallel analysis of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654 (1994), for guidance. (*See* ECF Nos. 48-1 at 7-8, 49 at 7-9 (arguing that circuits that have addressed this issue are split as to whether a public employee can be

Here, Plaintiff's Amended Complaint alleges that Defendant "oversees and directs the daily operations" of the Detention Center and exercises authority over all personnel. (ECF No. 44 ¶ 5.)  Plaintiff's FLSA claim alleges that he engaged in work activities for the Detention Center during his meal period and attended trainings for which he was not properly compensated. (ECF No. 44 ¶¶ 86-97 (arguing that it was encouraged and a "generally accepted practice that in order to advance, detention officers needed to work through meal breaks in other areas of the jail").)   Plaintiff's Amended Complaint indicates that Defendant's allegedly unlawful actions were inextricably tied to his official duties.  Plaintiff includes no allegation that, in so acting, Defendant attempted to serve personal interests distinct from his official duties.  *See Martin*, 772 F.3d at 196 (applying rule to similar facts).  Accordingly, the court finds that Defendant in his official capacity is the real party in interest and "sovereign immunity grounded in the Eleventh Amendment – requires dismissal" of Plaintiff's claim.  *See id.* (concluding similarly).

### B.  Whistleblower Claim

Defendant maintains that (1) Plaintiff's whistleblower claim against Defendant in his official capacity must be dismissed because he is entitled to Eleventh Amendment immunity, and (2) that in his individual capacity, the claim fails as a matter of law because the statute does not permit civil actions against individuals and Plaintiff has not exhausted his administrative remedies.  (*See* ECF No. 48-1.)

---

individually liable under the FMLA).)  Without reaching the issue of whether the FLSA precludes individual liability, the Fourth Circuit's analysis in *Martin* suggests that such an analysis is not necessary if the real party in interest is not the defendant in his individual capacity, but the defendant in his official capacity.  *See Martin*, 772 F.3d at 196.

i.      Whistleblower Claim – Defendant's Official Capacity

Defendant argues that Plaintiff's whistleblower claim against Defendant in his official capacity must be dismissed because he has Eleventh Amendment immunity. (ECF No. 48-1 at 9 n.4.)  The Whistleblower Act provides that:

> If an employee is dismissed, suspended from employment, demoted, or receives a decrease in compensation, within one year after having timely reported an alleged wrongdoing under this chapter, the employee may institute a nonjury civil action against the employing *public body* for (1) reinstatement to his former position; (2) lost wages; (3) actual damages not to exceed fifteen thousand dollars; and (4) reasonable attorney fees as determined by the court, but this award of attorney fees may not exceed ten thousand dollars for any trial and five thousand dollars for any appeal. The action must be brought in the court of common pleas of the county in which the employment action occurred. No action may be brought under this chapter unless (1) the employee *has exhausted all available grievance or other administrative remedies*; and (2) any previous proceedings have resulted in a finding that the employee would not have been disciplined but for the reporting of alleged wrongdoing.

S.C. Code Ann. § 8-27-30(A) (1993) (emphasis supplied).  The South Carolina Supreme Court ("SC Supreme Court") in *Town of Duncan v. State Budget and Control Bd., Div. of Ins. Servs.*, 482 S.E.2d 768, 771 (S.C. 1997), specifically indicated that the Whistleblower Act waives governmental immunity for whistleblower claims.  *Id.*  (citing S.C. Code Ann. § 8-27-30 (Supp. 1995)).

Defendant in his official capacity is a public body under the Whistleblower Act.[5] The Whistleblower Act defines a public body as:

> [A] department of the State; a state board, commission, committee, agency, or authority; a public or governmental

---

[5] The court observes that Defendant's Reply in Support indicates that he agrees that Sheriff Bruce Bryant in his official capacity is a public body.  (ECF No. 50 at 7.)

> body or political subdivision of the State, including
> counties, municipalities, school districts, or special purpose
> or public service districts; an organization, corporation, or
> agency supported in whole or in part by public funds or
> expending public funds; or a quasi-governmental body of
> the State and its political subdivisions.

S.C. Code Ann. § 8-27-10(1) (1993).   Construing the South Carolina Freedom of

Information Act ("FOIA"), S.C. Code Ann. §§ 30-4-10 to -165 (1991 & Supp. 2003), the

South Carolina Court of Appeals found that the "Sheriff's Department . . . falls within the

compass of the plain meaning of 'public or governmental body or political subdivision of

the State . . . .'"  *Burton v. York Cnty. Sheriff's Dep't*, 594 S.E.2d 888, 893 (S.C. Ct. App.

2004); *Sutler v. Palmetto Elec. Co-op., Inc.*, 481 S.E.2d 179, 180 (S.C. Ct. App. 1997)

(citation omitted) (stating that the definition of public body under FOIA is identical to the

Whistleblower Act).  Having made this threshold determination, in order for a lawsuit to

proceed, the Whistleblower Act requires an employee to exhaust all available grievances

or other administrative remedies.

Defendant argues that Plaintiff has not exhausted his administrative remedies.

"The general rule is that administrative remedies must be exhausted absent circumstances

supporting an exception to application of the general rule." *Hyde v. S.C. Dep't of Mental

Health*, 442 S.E.2d 582, 582-83 (S.C. 1994) (citing *Andrews Bearing Corp. v. Brady*, 201

S.E.2d 241 (S.C. 1973)) (emphasizing that "where an adequate administrative remedy is

available to determine a question of fact, one must pursue the administrative remedy or

be precluded from seeking relief in the courts); *see Burdine v. Greenville Technical Coll.*,

No. 6:08-cv-03764-JMC, 2010 WL 5211544, at  *13 (D.S.C. Dec. 16, 2010) (finding that

submitting written complaints does not satisfy exhaustion requirement).

"A general exception to the requirement of exhaustion of administrative remedies exists when a party demonstrates that a pursuit of them would be a vain or futile act." *Law v. S.C. Dep't of Corrs.*, 629 S.E.2d 642, 650 (S.C. 2006) (citation omitted) (emphasizing that futility must be demonstrated by a showing comparable to the administrative agency taking a "hard and fast position that makes an adverse ruling a certainty"). Moreover, as a state agency, Defendant is governed by the State Employee Grievance Procedure Act ("Employee Grievance Act"), which provides that:

> Each agency shall establish an agency employee grievance procedure . . . . A covered employee who wishes to appeal the decision of the agency grievance procedure to the State Human Resources Director shall file an appeal within ten calendar days of receipt of the decision from the agency head or his designee or within fifty-five calendar days after the employee files the grievance with the agency, whichever occurs later. The covered employee or the employee's representative shall file the request in writing with the State Human Resources Director. Failure to file an appeal with the State Human Resources Director within ten calendar days of the agency's final decision or fifty-five calendar days from the initial grievance, whichever occurs later, constitutes a waiver of the right to appeal . . . . A covered employee has the right to appeal to the State Human Resources Director an adverse employment action involving the issues specified in this section after all administrative remedies to secure relief within the agency have been exhausted.

S.C. Code Ann. § 8-17-330 (1996).

In *Law*, the SC Supreme Court addressed the issue of futility where a plaintiff had argued that the pursuit of administrative remedies in a wrongful termination claim would have been futile because the appeal was denied by the director of the defendant, and therefore futile. *See Law*, 629 S.E.2d at 650-51. The SC Supreme Court denied plaintiff's claims by reasoning, *inter alia*, that an appeal to the State Human Resources

Director, who was outside the agency should have allayed any concern of bias. *See id.* at 650-51.

Assuming that Defendant's employee grievance procedure was futile does not change the fact that Plaintiff had administrative procedures of which he did not avail himself. Here, Plaintiff's Amended Complaint alleges that there was no adequate or available grievance remedy or procedure. (ECF No. 44 ¶¶ 42-53 (arguing that plaintiff was told that use of any grievance procedure would be futile as Defendant was to be the final decision maker).) Moreover, Plaintiff argues that the York County Detention Center Policy and Procedure Manual indicates that "[i]f the department head (Sheriff) denies the grievance, the decision is final." (ECF No. 44 ¶ 53.)

Nevertheless, as in *Law*, Plaintiff's whistleblower claim is barred because of his failure to exhaust administrative remedies. Although the Employee Grievance Act may be phrased permissively regarding the appeal to the State Human Resources Director, the Whistleblower Act is not. *See Law*, 629 S.E.2d at 650 (indicating that plaintiff unsuccessfully argued that the Employee Grievance Act uses permissive language regarding the appeal to the State Human Resources Director). Plaintiff has failed to exhaust all of his administrative remedies. Accordingly, Plaintiff's whistleblower claim against Defendant in his official capacity is barred.

> ii.     Whistleblower Claim – Defendant's Individual Capacity

Defendant maintains that Plaintiff's whistleblower claim against Defendant in his individual capacity is barred. The Whistleblower Act does not provide for individual liability, but instead makes a public body answerable for such claims. *See* S.C. Code Ann. § 8-27-30(A). The definition of public body in the Whistleblower Act does not

include natural persons.  *See* S.C. Code Ann. § 8-27-10(1); *see Introini v. S.C. Nat'l Guard*, 828 F. Supp. 391, 396 (D.S.C. 1993).  Accordingly, Plaintiff's whistleblower claim against Defendant in his individual capacity is barred.

### C. Retaliation and Wrongful Termination in Violation of Public Policy

Defendant argues that Plaintiff's retaliation and wrongful termination in violation of public policy fails (1) against Defendant in his official capacity because it is barred by Eleventh Amendment immunity, (2) because alternative statutory remedies exist for the alleged wrong; and (3) because the cause of action will not lie against an individual. (ECF No. 48-1 at 12.)

### i. Retaliation and Wrongful Termination – Defendant's Official Capacity

Defendant argues that Plaintiff's retaliation and wrongful termination in violation of public policy claim against Defendant in his official capacity is barred by Eleventh Amendment immunity.  The general rule in South Carolina is that employment for an indefinite term is at-will and may be terminated by either party at any time with or without reason.  *See Mathis v. Brown & Brown of S.C., Inc.*, 698 S.E.2d 773, 778 (S.C. 2010).  There is an exception to at-will employment "where there is a retaliatory termination of the at-will employee in violation of a clear mandate of public policy." *Barron v. Labor Finders of S.C.*, 713 S.E.2d 634, 636-37 (S.C. 2011) (citing *Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213 (S.C. 1985)).

The public policy exception does not extend to situations where the employee has an existing statutory remedy for wrongful termination.  *See Barron*, 713 S.E.2d at 637.  A government employee may not bring a claim based on an alleged violation of

constitutional free speech and association rights, because he has a statutory remedy to vindicate those rights under § 1983. *See Epps v. Clarendon County*, 405 S.E.2d 386, 426 (S.C. 1991) (declining to extend *Ludwick* exception); *Stiles v. American Gen. Life Ins. Co.*, 516 S.E.2d 449, 452 (S.C. 1999) (Toal. J., concurring) (stating that "the *Ludwick* exception is not designed to overlap an employee's statutory . . . rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists").

Plaintiff argues that since his First Amendment § 1983 claims may not be found successful eventually, it is necessary that at this stage in the litigation he be permitted to plead his "violation of public policy claim" in the alternative. (ECF No. 49 at 16.) Limited remedies and procedural hurdles to recovery do not modify the conclusion that where statutory remedies are available, *Ludwick* claims are precluded. *See Newman v. S.C. Dep't of Emp't and Workforce*, No. 3:10–942, 2010 WL 4666360, at *4 (D.S.C. Apr. 16, 2010) (rejecting plaintiff's argument that the Employee Grievance Act and the Whistleblower Act, which were asserted as alternative statutory remedies, should not be dismissed because these remedies were limited).

Similarly, the SC Supreme Court dealt with this issue in *Lawson v. S.C. Dep't of Corrs.*, 532 S.E.2d 259 (S.C. 2000). In *Lawson*, the plaintiff alleged, *inter alia*, a wrongful discharge in violation of public policy and a violation of the Whistleblower Act. *See id.* at 260-61. In dismissing the plaintiff's wrongful discharge claim, the court held that since plaintiff alleges "a wrongful discharge only on the ground of his whistleblowing, he is limited to his remedy under the Whistleblower Act." *Id.* at 261. Turning to the plaintiff's whistleblower claim, the SC Supreme Court held that the trial

court had properly dismissed the plaintiff's whistleblower claim because he had failed to point to any policy violated by the alleged wrongdoing. *Id.*

Here, Plaintiff argues that the reasons for his wrongful discharge are his "expression of speech regarding matters of public safety" and the "result of retaliation for reporting and encouraging the reporting of wrongful behavior . . . ." (ECF No. 44 ¶¶ 123-34.)  Plaintiff has a statutory cause of action for his First Amendment Free Speech claim through § 1983 as well as a statutory remedy for retaliation through the Whistleblower Act.    Accordingly, Plaintiff's retaliation and wrongful termination claim against Defendant in his official capacity is barred.

> ii.    Retaliation and Wrongful Termination – Defendant's Individual Capacity

Defendant maintains that Plaintiff's retaliation and wrongful termination in violation of public policy claim against Defendant in his individual capacity is barred because the cause of action lies only against employers, not individuals.  (ECF No. 48-1 at 13.) Where the law is unclear, a federal court must "forecast a decision of the state's highest court [considering], *inter alia*: canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions." *Wells v. Liddy*, 186 F.3d 505, 528 (4th Cir. 1999) (citing *Liberty Mut. Ins. Co. v. Triangle Indus.*, 957 F.2d 1153, 1156 (4th Cir. 1992)).

South Carolina's public policy exception has its origins in *Ludwick*.  *See Ludwick*, 337 S.E.2d at 216.  In recognizing this public policy exception, the *Ludwick* court relied in part on *Sides v. Duke Univ.*, 328 S.E.2d 818, 827 (N.C. Ct. App. 1985), which rejected individual liability because there was no employment relationship between the

individuals and the plaintiffs.[6]  *See Ludwick*, 337 S.E.2d at 215-16; *see also Iglesias v. Wolford*, 539 F. Supp. 2d 831, 840 (E.D.N.C. 2008) (acknowledging *Sides* and stating that "[u]nder North Carolina law, the individual defendants cannot be liable for wrongfully discharging [plaintiff], because by [plaintiff's] own admission, the individual defendants were not her employer.").  Importantly, the District of South Carolina has expressed doubt over the existence of individual liability for a wrongful discharge claim. *See Fields v. Cnty. of Beaufort*, No. 9:08–3966–SB, ECF No. 102 (D.S.C. Feb. 25, 2010) (granting defendant's Motion for Judgment on the Pleadings regarding plaintiff's wrongful discharge claim).  Accordingly, Plaintiff's claim against Defendant in his individual capacity is barred.

### D.  South Carolina Payment of Wages Act ("SCPWA")

Defendant maintains that Plaintiff's cause of action pursuant to the SCPWA against (1) Defendant in his official capacity is barred by the Eleventh Amendment and that (2) the claim against Defendant in his individual capacity is preempted by the FLSA. (ECF No. 48-1 at 15-16.)  At the outset, the court observes that Plaintiff's Reply in Opposition does not address Defendant's argument that Eleventh Amendment immunity bars such claim against Defendant in his official capacity.

Assuming Eleventh Amendment immunity were inapplicable, the FLSA preempts Plaintiff's SCPWA claim against Defendant in his individual capacity.  The FLSA provides for payment of minimum wages and overtime.  *See* 29 U.S.C. §§ 206-207. "Congress prescribed exclusive remedies in the FLSA for violations of its mandates."

---

[6] The court also relied on *Petermann v. Int'l Bhd. of Teamsters*, 344 P.2d 25 (Cal. 1959) and *Wiskotoni v. Mich. Nat'l Bank-West*, 716 F.2d 378 (6th Cir. 1983), which had found a cause of action for wrongful discharge in violation of public policy.  *See Ludwick*, 337 S.E.2d at 215-16.

*Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007). This includes claims under the SCPWA that seek to recover minimum wages and overtime. *See Hudson v. City of Columbia*, No. 3:13–429, 2015 WL 337637, at *15 (D.S.C. Jan. 26, 2015).

Relying on *Monahan v. County of Chesterfield, Va.*, 95 F.3d 1263 (4th Cir. 1996), Plaintiff argues that his SCPWA claim is not preempted as he is seeking compensation for "pure gap time," which arises from Defendant's employment policy and not the FLSA. (ECF No. 49 at 18-19 (arguing that Defendant deducted one hour from Plaintiff's hourly wages for meal breaks and that he regularly performed work activities during his meal break).) Specifically, Plaintiff indicates that this pure gap time consists of uncompensated meal time, which did not exceed the point at which overtime wages were triggered (*i.e.*, 160 hours). *Id.* (arguing that he is owed wages at this regular hourly rate but is not due any overtime).) Plaintiff's argument appears to be that since *Monahan* "held that the FLSA was not the proper vehicle to pursue back pay for straight time in pay cycles in which plaintiffs had worked no overtime and had been paid at least a minimum wage for all hours" such claims are more "appropriate for state court adjudication under state employment and contract law."(ECF No. 49 at 19 (quoting *Monahan*, 95 F.3d at 1267).) The court disagrees.

Plaintiff misapprehends the holding in *Monahan*. In *Monahan*, the plaintiffs were paid an annual salary, which the county converted to an hourly rate to determine the plaintiff's applicable overtime rate. *See id.* at 1266. The plaintiffs were paid a salary that compensated them for all straight-time hours worked, and were paid overtime in addition to the salary, if they worked over 147 hours in a 24-day cycle. *See id.* at 1265-66. Since the plaintiffs were regularly scheduled to work 135 hours, but overtime did not begin

until 147 hours, there was a "gap" of twelve (12) hours for which plaintiffs who worked past 135 hours but less than the 147 hour overtime threshold received no extra pay.  *See id.* at 1266 (defining "pure gap time").  Although the court in *Monahan* held that absent a minimum wage/maximum hour violation there is no remedy under the FLSA for pure gap time claims, it also acknowledged that the FLSA prescribes remedies for issues related to meal compensation.  *See Monahan*, 95 F.3d at 1282, 1284 (agreeing that meal time may be compensable under FLSA if employees are not completely relieved of their duties).

Here, unlike the plaintiffs in *Monahan* whose gap time claims were denied as irremediable under the FLSA, Plaintiff does not seek hours that fall into a gap between his normal scheduled hours and the threshold for overtime.  Plaintiff, instead, seeks compensation for allegedly unpaid meal breaks and training.  As Defendant's Reply in Support points out, Plaintiff's Amended Complaint "does not plead that Defendant had a policy to compensate him in some manner for meals and training, but failed to do so.  Rather, he claims that [Defendant's] policy for compensating him (or not) for meals and training violated the FLSA."  (ECF Nos. 44 ¶¶ 88-98, 44-2, 50 at 14.)  Moreover, the court notes that in Plaintiff's Amended Complaint, he alleges that he regularly worked an excess of 160 hours per four weeks and was not paid accordingly for his overtime, yet also claims that he is not due overtime.  (ECF Nos. 44 ¶ 86, 49 at 18-19.) The FLSA provides regulations for determining when meal times and training times must be counted at work.  *See* 29 C.F.R. §§ 553.223, 553.226, 785.19.  Accordingly, Plaintiff's SCPWA claim is preempted by the FLSA and is therefore dismissed.

## IV.    CONCLUSION

In conclusion, Plaintiff's First Amendment Right to Free Speech and Fourteenth Amendment Right to Due Process monetary claims pursuant to § 1983 against Defendant, in his official capacity, are barred, and all of Plaintiff's remaining claims for violations of the Whistleblower Act, FLSA, SCPWA, and public policy for retaliation and wrongful termination are barred.  The only surviving claims at this time are Plaintiff's § 1983 claims for prospective injunctive relief against Defendant in his official capacity and Plaintiff's § 1983 claims against Defendant in his individual capacity.  For the reasons above, Defendant's Motion for Partial Summary Judgment is **GRANTED**. (ECF No. 48.)

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

August 17, 2015
Rock Hill, South Carolina