# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### ROCK HILL DIVISION

| | | |
|---|---|---|
| Michael Billioni, | ) | Civil Action No.: 0:14-cv-03060-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER ON REMAND** |
| York County and Sheriff Bruce Bryant, | ) | |
| individually and in his official capacity as | ) | |
| York County Sheriff, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Michael Billioni filed this action against Defendants York County and Sheriff Bruce Bryant, individually and in his official capacity as York County Sheriff ("Sheriff Bryant"), (together "Defendants") seeking damages and injunctive relief stemming from the termination of his employment. (ECF No. 120.) On June 20, 2017, the court entered an Order and Opinion (ECF No. 171) that denied Sheriff Bryant's Motion for Summary Judgment (ECF No. 145) as to Plaintiff's claim alleging infringement of his right to free speech under the First Amendment for comments made to his wife on October 22, 2013, regarding what Plaintiff saw on a video recording of the incident that led to Joshua Grose's death.

This matter is before the court on remand from the United States Court of Appeals for the Fourth Circuit, which vacated this court's decision regarding Plaintiff's First Amendment claim and remanded the matter for the court "to apply the correct legal standard to determine whether Billioni's speech is protected under the First Amendment." (*See* ECF No. 193 at 15.) Specifically, the Fourth Circuit found error in the aforementioned opinion because in applying

the second prong of the *McVey* test,[1] the court erroneously required Defendants to show an "actual disruption" instead of a reasonable apprehension of disruption based on the court's observation that "any disruption caused by the internal investigation that was conducted by the YCSO,[2] such disruption is clearly outweighed 'by the public's interest in the disclosure of misconduct or malfeasance.'" (*See id.* at 12; *see also* ECF No. 171 at 23.) As a result of the Fourth Circuit's decision to remand, the court is required to consider "whether the evidence permits a conclusion that a reasonable factfinder could find that Sheriff Bryant reasonably apprehended disruption within the YCSO as a result of Billioni telling his wife about the surveillance video that outweighs Billioni's interest in speaking out about the surveillance video." (ECF No. 193 at 13.)

In light of the Fourth Circuit's opinion, the court permitted the parties to submit briefing and oral argument regarding the issue on remand. (*See* ECF Nos. 204, 205, 208, 209, 212.)

## I.   ANALYSIS

### A.   The Parties' Arguments

In his brief, Sheriff Bryant contends that a reasonable apprehension of disruption within the YCSO is demonstrated by his having to "investigate the source of conflicting information"

---

[1] In *McVey v. Stacy*, the United States Court of Appeals for the Fourth Circuit observed that:

> [T]o determine whether a public employee has stated a claim under the First Amendment for retaliatory discharge, we must determine (1) whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest; (2) whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and (3) whether the employee's speech was a substantial factor in the employee's termination decision.

157 F.3d. 271, 277–78 (4th Cir. 1998) (citations omitted).
[2] YCSO refers to the York County Sheriff's Office.

that resulted from Plaintiff's "misinformation about Grose's treatment [that] got to the press." (ECF No. 204 at 12.) To this point, Sheriff Bryant asserts that his "staff was telling him the officers handled Grose properly but the media was accusing the Sheriff's officers of having murdered Grose, and now the Sheriff had to reconcile the two versions of events, if he could at all." (*Id.* at 15.) More specifically, Sheriff Bryant argues that:

> Had Plaintiff reported his concerns up the chain of command or even to SLED in the first instance and been disciplined, this might be a different case. Whatever information Plaintiff had, it would have been conveyed directly to investigators with no chance for miscommunication and no chance for misinformation being released to the public. Instead, however, Plaintiff took confidential Sheriff's Office information to his wife for the express purpose of getting her to take the story straight to her TV-station employer without giving the investigation that the Sheriff's Office had ordered, and Plaintiff knew was ongoing, any time to come to a conclusion. In so doing, the facts reaching the media got warped into Grose's being hit in the head twelve times – something everyone agrees did not happen – before succumbing to death in the Sheriff's custody. That this false information was in the press was in and of itself disruptive because, as Sheriff Bryant and Chief Arwood testified, it contradicted what the SLED investigators were telling them and, thus, had to be investigated from the ground up. They had to determine who gave the information to the press, what that person saw, and how, if at all, what that person saw fit with what SLED had disclosed to the Sheriff's Office.

(ECF No. 204 at 16–17.) Moreover, in consideration of the foregoing, Sheriff Bryant posits he is entitled to summary judgment because "[t]here simply is no credible argument that Plaintiff's interest in rushing to judge his colleagues based on incomplete information outweighed the Sheriff's interest in enforcing a policy designed to provide the public with accurate information." (*Id.* at 23.)

In his remand brief, Plaintiff argues that "a reasonable factfinder could find [][his] speech would not cause a reasonable apprehension of disruption." (ECF No. 205 at 3.) In support of his argument, Plaintiff asserts that "[t]he deposition testimony of his work colleagues, clearly establishes that [][his] speech did not impair the disciplinary authority of supervisors; impair harmony among his coworkers; impede[] the performance of his duties; interfere with the

operation of the institution; or undermine[] the mission of the institution." (*Id.* (citing ECF Nos. 205-1, 205-2, 205-3, 205-4).) However, Plaintiff asserts that "even if this Court were to find [][his] speech created a reasonable apprehension of disruption, it would be outweighed due to the importance of his speech." (*Id.* at 7.)

B.    The Court's Review

1. *The Standard of Review*

As the second prong of the test the Fourth Circuit described in *McVey v. Stacey*, 157 F.3d. 271 (4th Cir. 1998), the court balances "whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public." *Id.* at 277; *see also Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cty., Ill.*, 391 U.S. 563, 568 (1968) ("The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."). "The public's interest in hearing the employee's speech also weighs in the balance: 'A stronger showing of public interest in the speech requires a concomitantly stronger showing of government–employer interest to overcome it.'" *Brickey v. Hall*, 828 F.3d 298, 304 (4th Cir. 2016) (quoting *McVey*, 157 F.3d at 279). "Whether the employee's interest in speaking outweighs the government's interest is a question of law for the court." *Smith v. Gilchrist*, 749 F.3d 302, 309 (4th Cir. 2014) (citing *Joyner v. Lancaster*, 815 F.2d 20, 23 (4th Cir. 1987)). Moreover, when balancing the competing interests, the public employer is not required "to prove that the employee's speech actually disrupted efficiency, but only that an adverse effect was "reasonably to be apprehended." *Maciariello v. Sumner*, 973 F.2d 295, 300 (4th Cir. 1992) (citing *Jurgensen v. Fairfax Cty., Va.*, 745 F.2d 868, 879 (4th Cir.

1984)).

To accomplish this balancing, the court "must take into account the context of the employee's speech, including the employee's role in the government agency, and the extent to which it disrupts the operation and mission of the agency." *McVey*, 157 F.3d at 278 (citing *Rankin v. McPherson*, 483 U.S. 378, 388–91 (1987)). "Factors relevant to this inquiry include whether the employee's speech (1) 'impairs discipline by superiors'; (2) impairs 'harmony among co-workers'; (3) 'has a detrimental impact on close working relationships'; (4) impedes the performance of the public employee's duties; (5) interferes with the operation of the agency; (6) undermines the mission of the agency; (7) is communicated to the public or to co-workers in private; (8) conflicts with the 'responsibilities of the employee within the agency'; and (9) makes use of the 'authority and public accountability the employee's role entails.'" *Id.* (quoting/citing *Rankin*, 483 U.S. at 388–91). "Of particular relevance to this case, police entities have a uniquely strong interest in maintaining orderly operations because they are 'paramilitary,' such that 'discipline is demanded, and freedom must be correspondingly denied.'" *Supinger v. Virginia*, 259 F. Supp. 3d 419, 446 (W.D. Va. 2017) (quoting *Maciariello*, 973 F.2d at 300).[3]

---

[3] As to police departments, the court in *Maciariello* further observed:

> A police department has an undeniable interest in discouraging unofficial internal investigations. If personal investigations were the usual way for an officer to check out suspicious activities of a fellow officer, the effect on efficiency and morale could be very disrupting, and the effectiveness of the police force might deteriorate. Instead of concentrating on their traditional duties in the community, officers with personal hostilities could become preoccupied with personal investigations of one another. Esprit de corps could collapse into a kafkaesque nightmare of improper investigations into the impropriety of improper investigations.

*Maciariello v. Sumner*, 973 F.2d 295, 300 (4th Cir. 1992).

## 2. *Sheriff Bryant's Interest*

Sheriff Bryant asserts that he has an interest "in maintaining effective and efficient law enforcement operations." (ECF No. 204 at 12.) To accomplish this task, Sheriff Bryant specifies that he has policies in place to (1) protect the confidentiality of inmate data,[4] (2) ensure the accuracy of information conveyed to the public,[5] and (3) require honesty and full cooperation of officers regarding any observed violations of the law.[6] (*Id.* at 13.) Sheriff Bryant further points out that Plaintiff admits that he violated these provisions. (*Id.* at 12 (citing ECF No. 145-6 at 140:8–141:6).) As for the adverse effect of Plaintiff's speech on the Sheriff's Office's ability to serve the public effectively and efficiently, Sheriff Bryant posits that he had to essentially divert resources to investigate the source of information conflicting with reports coming from an

---

[4] In the York County Detention Center Policy & Procedures Manual, the "confidential information" policy provides as follows:

 1. Inmate and employee records are considered confidential information. No employee is to divulge information pertaining to inmates and/or employees of the Detention Center except for official business purposes and then only authorized persons and agencies with official need to know.
 2. Employees are not to discuss information pertaining to inmates and/or employees except for official business purposes and then only with those persons who have an official reason to know the information.

(ECF No. 145-6 at 221 § VII.)

[5] The York County Detention Center Policy & Procedures Manual requires employees to "COMMUNICATE [w]ith people in or outside of the jail, whether by phone, written word, or mouth, in such a way so as not to reflect in a negative manner upon my agency." (ECF No. 145-6 at 217.)

[6] In the York County Detention Center Policy & Procedures Manual, the employee conduct policy provides as follows:

 Employees will comply will all Federal, State, and local laws and ordinances and immediately report any violation. Employees will not make any false statements, or intentionally misrepresent or mislead facts. Employees are required to answer questions and cooperate fully in the course of any internal investigation whether conducted by the Detention Center or other authorized external agency.

(ECF No. 145-6 at 222 ¶ 16.)

investigation that the South Carolina Law Enforcement Division was conducting. (ECF No. 145-8 at 48:8–11 ("I would not allow my employees to talk about an investigation that would prohibit that investigation from being concluded.").) In this regard, Sheriff Bryant testified as follows:

> Q: What was your response to Ms. Jordan[, Sheriff's Office General Counsel], after she told you about this phone call [from local television reporter Stuart Watson]?
>
> A: My response was that we needed to get to the bottom of that. I do recall that that bothered me a lot. The reason was that she was telling me things that I had not heard from my staff.
>
> Q: Other than the information about the strikes to the head, what other specific information did you gain from her as a result of the conversation?
>
> A: I can't remember the exact information that Kristie passed to me in regard to that or what all Stuart Watson [the reporter] told her. The amount of information that she passed on to me caused me concern, and I wanted to get to the bottom of it for the mere fact that I didn't want false accusations about what went on in my facility. As a result, I informed my staff that we had to get to the bottom of it, and I wanted to know if we had a witness over there that saw something, that we hadn't talked to or knew something that we didn't know.

(ECF No. 145-9 at 9:18–10:11.)

Upon consideration of the foregoing, the court observes that Plaintiff's speech, and his actions in support of that speech, clearly violated policies of the YCSO and caused Sheriff Bryant to devote resources to engage in an internal investigation of criminal conduct by officers of the York County Detention Center alleged by a local television reporter, even while SLED was already conducting an investigation into the events surrounding Grose's death. Accordingly, the court is constrained to find that Sheriff Bryant's evidence sufficiently demonstrates a reasonable apprehension of disruption within the YCSO as a result of Plaintiff's speech.

### 3. *Plaintiff's Interest*

"Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." *Kirby v. City of Elizabeth City, N.C.*, 388 F.3d 440, 446 (4th

Cir. 2004) (citing *Connick v. Myers*, 461 U.S. 138, 146 (1983)).  As it observed in the June 20, 2017 Order, Plaintiff's interest in his speech is a public concern because it involved "alleged misconduct by correctional officers in a situation wherein an inmate died" while in the custody of the YCSO.  (ECF No. 171 at 23 (citing *Brawner v. City of Richardson, Tex.*, 855 F.2d 187, 191–92 (5th Cir. 1988) ("The disclosure of misbehavior by public officials is a matter of public interest and therefore deserves constitutional protection, especially when it concerns the operation of a police department.")).)

    *4.  The Balancing of Sheriff Bryant's Interest and Plaintiff's Interest*

In attempting to balance the disruptiveness of Plaintiff's speech and its First Amendment value, the court observes that the record does not support any finding that Plaintiff's speech impaired the maintenance of discipline at the YCSO, hurt workplace morale, or impeded Plaintiff from carrying out his duties.  However, as emphasized in the following paragraph, the court finds that the evidence is uncontroverted that Plaintiff's speech substantially interfered with the efficient operation of the YCSO and the investigation into the events surrounding Joshua Grose's death:

> Plaintiff here knew that the State Law Enforcement Division, an independent state agency, was investigating the death.  He knew SLED had access to the same information and videos he did. In fact, SLED had access to more information than Plaintiff because SLED investigators interviewed the officers involved in the incident – which Sheriff Bryant had requested immediately upon learning of Grose's death.  Yet Plaintiff gave SLED's investigation no chance to reach a conclusion before Plaintiff ran to the media (his wife) to accuse his fellow officers and superiors of misconduct.  Nor did Plaintiff take whatever concerns he had to his superiors, or to SLED.[7]

----

[7]    Plaintiff testified as follows:

Q. And you had not reported that information, these concerns that you had, or what not to anybody else.
A. No.
Q. No one in your chain of command?

(ECF No. 204 at 12.)  In this regard, the court agrees with Sheriff Bryant that "Plaintiff's interest in rushing to judge his colleagues based on incomplete information" does not outweigh "the Sheriff's interest in enforcing a policy [or policies] designed to provide the public with accurate information" regarding the Grose investigation.  (*Id.* at 23); *see also Shelton Police Union, Inc. v. Voccola*, 125 F. Supp. 2d 604, 625 (D. Conn. 2001) ("In order to function effectively, the police department must have control over statements attributed to it and must be able to protect information about pending investigations so as not to put the investigation or those involved in it at risk.").  Therefore, the court finds that Plaintiff cannot satisfy the second prong of the *McVey* test.  Accordingly, the court concludes that his speech is not protected by the First Amendment as a matter of law.[8]

## II.   CONCLUSION

Upon careful consideration of the entire record on remand, the court hereby **GRANTS** the Motion for Summary Judgment (ECF No. 145) of Defendants York County and Sheriff Bruce Bryant, individually and in his official capacity as York County Sheriff, as to the claims against Defendant Sheriff Bryant alleging infringement of Plaintiff's First Amendment rights.

---

A.  No.
Q.  No one who could investigate it.
A.  No.
Q.  If you had concerns about the things that you've testified to earlier, wouldn't SLED be an appropriate place to lodge those concerns?
A.  Not in this instance.

(ECF No. 145-6 at 140:20–141:6.)

[8] Because Plaintiff's First Amendment claim fails on its merits, the court is not required to address Sheriff Bryant's qualified immunity defense.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

**IT IS SO ORDERED.**

J. Michelle Childs
United States District Judge

October 10, 2019
Columbia, South Carolina